IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLIANCE BANK, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 10-2249 |
| | : | |
| v. | : | |
| | : | |
| NEW CENTURY BANK, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF ALLIANCE BANK'S RESPONSE TO
DEFENDANT'S PROPOSED CONCLUSIONS OF LAW**

After failing to provide its proposed conclusions of law on June 28, 2010, simultaneously with Plaintiff's filing, with no rebuttal, (see Tr. 06/17/10 at 228, 317; Tr. 06/18/10 at 46-48), the Court provided Defendant the opportunity to belatedly file the same by July 1, 2010.  In so doing, the Court made clear that Defendant's proposed conclusions of law "should be tailored specifically to [Defendant's] proposed findings of fact," and not be a rebuttal type of filing, addressing matters raised after the fact.  (See Tr. 06/29/10 at 5-7.)  Despite this directive, Defendant's proposed conclusions of law (D.I. 31) contain several issues that were raised for the first time at oral argument for Plaintiff's Motion for Preliminary Injunction (D.I. 30) and/or scantily addressed in Defendant's prior submissions to this Court.  Accordingly, Plaintiff respectfully submits this response to these issues.  (See Tr. 06/29/10 at 6.)

**I.    PLAINTIFF HAS MADE USE OF THE MARK CUSTOMER FIRST IN COMMERCE IN CONNECTION WITH ALL OF THE SERVICES LISTED IN ITS REGISTRATION.**

In its memorandum in opposition to Plaintiff's motion for preliminary injunction, Defendant essentially argued that Plaintiff's Certificate of Registration No. 3,313,156 is invalid

based solely on one ground, namely that this registration was obtained through fraud.  (See Def.'s Opp. Mem. [D.I. 16] at pp. 1-2, 8-10.)

Apparently realizing the futility of this argument, Defendant now contends more fully[1] that Plaintiff's registration is invalid and should be canceled on the basis that there never has been any bona fide use of the mark CUSTOMER FIRST in commerce in connection with "investment banking" or "mortgage services."  (See Def.'s Prop. Conclusions of Law [D.I. 31] at ¶¶ 71-74.)  The basis for this contention is that Plaintiff has never offered a "Customer First Mortgage," "Customer First Home Equity Loan" or "Customer First Investment Account" product and that Plaintiff's use of "Customer First Checking" as a "hub" for all of its banking services does not serve as the use of the mark CUSTOMER FIRST in the sale or advertising of "investment banking" or "mortgage" services.  (See id.)  The record evidence, however, refutes Defendant's contention, as it omits material facts from the record in reliance upon its untenable position.

Under the Lanham Act, a "service mark" is "any word, name, symbol, or device, or any combination thereof" used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown."  15 U.S.C. § 1127.  "[A] mark shall be deemed to be used in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."  Id.  Thus, all that is necessary to establish proper use of a service mark is to show that the mark "is used or displayed in the sale or advertising of services" in such a way as to "identify the services of one person and distinguish them from the services of others."

---

[1]   In its Opposition Memorandum, Defendant addressed the issue without any substantive analysis and merely by referencing the fact that the mark is invalid for, among other things, descriptiveness, non-use in commerce and mutilation, and that it intends to assert the same in a counterclaim.  (See D.I. 16 at p. 8, n. 3.)

Further, the United States Patent and Trademark Office ("USPTO") requires that a service mark specimen "must show the mark as actually used in the sale or advertising of the services." 37 C.F.R. § 2.56(b)(2).

As an initial matter, it is significant that, here, the USPTO accepted – without objection or exception – Plaintiff's specimens of advertising showing use of the mark CUSTOMER FIRST associated with Plaintiff's banking services as good and appropriate service mark use for the services identified in Plaintiff's registration. (See PX-10 (showing various advertisements featuring Plaintiff's CUSTOMER FIRST Checking Account).) This acceptance of service mark use was a question of fact concerning which the judgment of the Examining Attorney is entitled to a presumption of correctness. Cf. In re Keyes Fiber Company, 217 USPQ 730, 734 (TTAB 1983) (where the asserted mark consisted of subject matter not ordinarily perceived as a trademark, the Examining Attorney's evaluation that it was not entitled to registration was a presumption which had to be overcome by persuasive evidence to the contrary) and cases cited therein; see also 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a).

Secondly, Defendant has failed to provide any kind of authority or support – indeed, Plaintiff is unaware of any – requiring that a provider of "investment banking" or "mortgage services" must demonstrate use of a mark on a specifically entitled "Investment Account" or "Mortgage" product in order to demonstrate appropriate service mark usage. To the contrary, all that needs to be shown under the Lanham Act is an association between the term and the service in the service mark claimant's sale or advertising of the service. See 15 U.S.C. § 1127.

More importantly, Defendant's arguments regarding the merits of Plaintiff's service mark use are, at best, unconvincing. The record clearly demonstrates that since March 2006, Plaintiff continuously has used CUSTOMER FIRST as an advertising identifier in connection with all of

the banking services that Plaintiff offers.  (See Tr. 06/17/10 at 7:22-8:8, 24:17-25:19, PX-2.)  In this respect, Plaintiff has produced an ad copy of a large poster that was used as an advertisement in various bus shelters throughout the Delaware Valley from March 2006 through 2007.  (Tr. 06/17/10 at 24:16-25:14, 156:9-157:4, PX-2.)  This particular poster featured the phrase "Customer First Banking Just Hit Home" in association with Plaintiff's Home Equity Line of Credit services and an offered rate of "prime minus one," (PX-2), a service which often serves as a second mortgage.  The record shows that variations of the advertisement shown in PX-2 were run in other ways over the past three years.  (Tr. 06/17/10 at 157:7-15.)  The record shows testimony in support of the fact that other "Customer First Banking" advertising was used throughout the Plaintiff's banking operations (such as ads at the teller desks and counters) and in direct mailings.  (Tr. 06/17/10 at 25:15-19.)  Further, the record shows that since March 2006, Plaintiff has prominently displayed the mark CUSTOMER FIRST on lapel pins worn by Alliance employees that interacted with and rendered Plaintiff's banking services – which included mortgage and investment banking services – to the public. (See Tr. 06/17/10 at 26:2-23, 37:1-38:18, 65:1-66:21, PX-24.)  In addition, the record irrefutably shows that since March 2006, Plaintiff has used CUSTOMER FIRST to identify an interest-bearing checking product, (see Tr. 06/18/10 at 14:19-15:1); certainly an interest-bearing account can be considered as a type of investment product.

Thus, it is readily apparent that the above-described use of CUSTOMER FIRST amounts to the use and display of a mark in the sale and advertising of Plaintiff's banking services, including its "investment banking" or "mortgage services."  Defendant's argument is wholly without merit.  This is far from a situation where there exist disputed issues of fact, as Defendant claims.

## II.     PLAINTIFF HAS NOT ABANDONED THE MARK CUSTOMER FIRST.

Like its argument that Plaintiff's registration is invalid for non-use, Defendant now contends, for the first time, that Plaintiff's registration is invalid on the grounds that Plaintiff has abandoned the mark CUSTOMER FIRST.  And like its argument regarding non-use, Defendant's argument regarding abandonment is without any basis in law, fact or logic.

The Lanham Act states that "[a] mark shall be deemed to be 'abandoned' if . . . its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127.  "To establish the defence [sic] of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon.  Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed."  Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 31 (1900).  "[A]bandonment, being in the nature of a forfeiture, must be strictly proved." United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 139 (3d Cir. 1981); see also Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980) (recognizing that because it constitutes the forfeiture of a property right, abandonment must be proven by clear and convincing evidence).  Thus, in order to show that there was an abandonment of Plaintiff's rights in the mark CUSTOMER FIRST, Defendant bears the burden of "strictly" proving by clear and convincing evidence (a) that use of the mark CUSTOMER FIRST has been discontinued by Plaintiff and (b) that Plaintiff had the actual intent to abandon the mark.  See Marshak v. Treadwell, 240 F.2d 184, 198 (3d Cir. 2001).

In the present case, Defendant's proposed conclusions regarding abandonment (see Def.'s Prop. Conclusions of Law [D.I. 31] at ¶¶ 79-83.), are misleading and not supported by any

5

evidence, let alone clear and convincing evidence. As demonstrated above, and as set forth in Plaintiff's Proposed Findings of Fact and Conclusions of Law (D.I. 29 at ¶¶ 14-19), Plaintiff has made substantial and continuous use of the mark CUSTOMER FIRST in association with all of the banking services that it offers, including those listed in Certificate of Registration No. 3,313,156. At a minimum, it is undisputed that, since March 2006, CUSTOMER FIRST has been used continuously in connection with 4000 checking accounts with approximately $45 million in deposits. (Tr. 06/17/10 at 9:8-14.) This hardly amounts to non-use. Even if, arguendo, one were to ignore the substantial evidence and testimony of use over the past four years that has been presented by Plaintiff in this matter, Defendant has failed to point to any significant or probative evidence of an actual intent to abandon the mark CUSTOMER FIRST by Plaintiff by clear and convincing. None. Defendant's blind contention that Plaintiff has shown no intent to resume use of the mark CUSTOMER FIRST, because its employees stopped wearing the CUSTOMER FIRST lapel pin (PX-24) 2 ½ years ago, is not only overblown rhetoric, it is belied by the record. Though not required to do so, Plaintiff's employees have worn and continue to wear the CUSTOMER FIRST lapel pin to identify and distinguish Plaintiff and its services. (See Tr. 06/17/10 at 26:2-23, 37:1-38:18, 65:1-66:21.)

Like its argument regarding non-use, supra, there are no disputed issues – Defendant's argument regarding Plaintiff's purported abandonment is wholly without merit.

### III. DEFENDANT'S MUTILATION ARGUMENT IS MERITLESS.

Defendant's argument regarding "mutilation," previously addressed only in a footnote,[2] simply ignores the law and the record.

> "Mutilation" refers to a situation where a seller seeks registration of something less than the totality of his trademark.

---

[2] See D.I. 16 at p. 8, n. 4.

> That is, the seller "mutilates" his trademark, severs a part of it, and seeks registration only of that part. The Patent and Trademark Office may then reject registration, saying that the applicant is trying to register something less than his full trademark, thereby attempting to obtain protection for an element that is only his in combination with other words or symbols

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:59 (4th ed. 2010).

It is well settled that an applicant may seek to register any portion of a composite mark, if that portion presents a separate and distinct commercial impression which indicates the source of applicant's goods or services and distinguishes applicant's goods or services from those of others. See Institut National des Appellations D'Origine v. Vintners International Co. Inc., 958 F.2d 1574, 1582-83 (Fed. Cir. 1992) (finding no mutilation of CALIFORNIA CHABLIS WITH A TWIST vs. CHABLIS WITH A TWIST, where "'California' is not a part of the trademark" and is "wholly devoid of trademark significance" and where the TTAB "which consists of experts in trademark law, believed that [the trademark was] CHABLIS WITH A TWIST"). If the portion of the mark sought to be registered does not create a separate and distinct commercial impression, the result is an impermissible mutilation of the mark as used. The issue of mutilation "all boils down to a judgment as to whether that designation for which registration is sought comprises a separate and distinct trademark in and of itself and the portion sought to be registered…performs the trademark function of identifying the source of the merchandise [or services] to the customers." In re Chemical Dynamics Inc., 939 F.2d 1569, 1571 (Fed. Cir. 1988) (internal alterations, quotations and citation omitted).

The evidence in the present case – from the specimens that were submitted to and accepted by the USPTO to the representative copies of advertising used by Plaintiff – shows

7

clearly that "CHECKING" is not a part of Plaintiff's mark.  It is the composite CUSTOMER FIRST that creates a commercial impression separate and apart from CHECKING.  It cannot be seriously argued that the term CHECKING, when used in connection with CUSTOMER FIRST, is anything other than generic; it has no trademark significance.  It is not a necessary part of the mark, and in fact, the mark CUSTOMER FIRST has been used alternatively with the generic term BANKING to identify Plaintiff's services.  It is the composite CUSTOMER FIRST that has trademark significance and indicates the source of Plaintiff's banking services.  See In re Raychem Corp., 12 USPQ2d 1399, 1400 (TTAB 1989) (Board reversed refusal to register TINEL-LOCK as mutilation of mark TRO6AI-TINEL-LOCK-RING, noting that part or stock number does not usually function as a source identifier, and that the "fact that hyphens connect both the part number and the generic term to the mark does not, under the circumstances presented in this case, create a unitary expression such that 'TINEL-LOCK' has no significance by itself as a trademark.")  In addition, not only has the trademark ("™") symbol been used by Plaintiff to indicate as much, but the USPTO – a qualified government agency which is entrusted to administer the Lanham Act and which includes Trademark Examining Attorneys who are assumed to have expertise in trademark law – believed Plaintiff's mark to be CUSTOMER FIRST, not CUSTOMER FIRST CHECKING.  As noted above, the USPTO accepted Plaintiff's application and specimens of advertising showing use of the mark CUSTOMER FIRST associated with Plaintiff's CUSTOMER FIRST Checking Account.  (See id..)  Undoubtedly, if there was an issue regarding "mutilation," the USPTO would have rejected Plaintiff's application on that basis.  See TMEP § 807.12(d) (6th ed., Rev. 2, May 21, 2010.)  However, there was no objection of any kind by the USPTO that the mark Plaintiff was trying to register is something less than the full mark, CUSTOMER FIRST.  (See PX-10.)

In light of the foregoing, there is no genuine dispute as to Defendant's claim of mutilation – it is, like its other purported defenses, without merit. <u>Institut National des Appellations D'Origine</u>, 958 F.2d at 1582-83.

## VII.  CONCLUSION.

For the foregoing reasons and the reasons set forth in Plaintiff's previous filings, Plaintiff's Motion for Preliminary Injunction should be granted.

> Respectfully submitted,
>
> CAESAR, RIVISE, BERNSTEIN,
> COHEN & POKOTILOW, LTD.

Dated: July 2, 2010         By     /SGuerriero/ Val. Code SRG3999
>                      Manny D. Pokotilow (ID#13310)
>                      Salvatore Guerriero (ID# 83860)
>                      1635 Market Street
>                      11th Floor - Seven Penn Center
>                      Philadelphia, PA  19103-2212
>
>                      Attorneys for Plaintiff Alliance Bank

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the within PLAINTIFF ALLIANCE BANK'S RESPONSE TO DEFENDANT'S PROPOSED CONCLUSIONS OF LAW is being electronically filed with the Clerk of Court via the ECF for the U.S. District Court for the Eastern District of Pennsylvania on July 2, 2010.  The undersigned further certifies that true copies of the same are being served upon counsel of record for Defendant, on this same day, by the ECF:

> Darius C. Gambino
> DLA Piper LLP
> One Liberty Place
> 1650 Market Street
> Suite 4900
> Philadelphia, PA 19103

>              /SGuerriero/
>            Salvatore Guerriero